TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8644
    Facsimile: (213) 894-0141
    E-mail:   Matthew.O'Brien@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

**2/24/2021**

CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No.  2:21-cr-00073-MWF |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT SHORESIDE ENTERPRISES, INC. |
| v. | |
| SHORESIDE ENTERPRISES, INC., | |
| Defendant. | |

    1.   This constitutes the plea agreement between defendant

SHORESIDE ENTERPRISES, INC. ("defendant"), and the United States

Attorney's Office for the Central District of California (the "USAO")

in the above-captioned case.  This agreement is limited to the USAO

and cannot bind any other federal, state, local, or foreign

prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

        a.   At the earliest opportunity requested by the USAO and

provided by the Court, appear and plead guilty to a single-count

information in this matter, in the form attached to this agreement as

Exhibit A or a substantially similar form, which charges defendant with a violation of Title 18, United States Code, Section 371, conspiracy to commit an offense against the United States, namely, introducing misbranded drugs into interstate commerce, in violation of 21 U.S.C. §§ 331(a), 352, and 333(a)(1), a Class A misdemeanor offense.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

g.   Make restitution (if ordered by the Court) and not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

h.   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

i.   Recommend and advocate to the Court that defendant be sentenced as provided in paragraph 12.

//

//

2

1

THE USAO'S OBLIGATIONS

2      3.    The USAO agrees to:

3            a.    Not contest facts agreed to in this agreement.

4            b.    Abide by all agreements regarding sentencing contained

5    in this agreement.

6            c.    Except for criminal tax violations (including

7    conspiracy to commit such violations chargeable under 18 U.S.C.

8    § 371), not further criminally prosecute defendant for violations

9    arising out of defendant's conduct described in the factual basis.

10   Defendant understands that the USAO is free to criminally prosecute

11   defendant and/or any of its managers or members for any other

12   unlawful past conduct or any unlawful conduct that occurs after the

13   date of this agreement.  Defendant agrees that at the time of

14   sentencing the Court may consider any uncharged conduct in

15   determining the applicable Sentencing Guidelines range, the propriety

16   and extent of any departure from that range, and the sentence to be

17   imposed after consideration of the Sentencing Guidelines and all

18   other relevant factors under 18 U.S.C. § 3553(a).

19           d.    Recommend and advocate to the Court that defendant be

20   sentenced as provided in paragraph 12.

21

COMPANY AUTHORIZATION

22      4.    Defendant represents that it is authorized to enter into

23   this agreement.  On or before the change of plea hearing pursuant to

24   this agreement, defendant shall provide the USAO and the Court with a

25   notarized legal document certifying that defendant is authorized to

26   enter into and comply with all of the provisions of this agreement.

27   Such resolution(s) shall designate BRIAN DEAN MOSES as the company

28   representative who is authorized to take the actions specified in

1   this agreement, including pleading guilty on behalf of the company,

2   and shall also state that all legal formalities for such

3   authorizations have been observed.

4                ORGANIZATIONAL CHANGES AND APPLICABILITY

5        5.   This agreement shall bind defendant, its successor entities

6   (if any), parent companies, and any other person or entity that

7   assumes the liabilities contained herein ("successors-in-interest").

8   Defendant, or its successors-in-interest, if applicable, shall

9   provide the USAO and the United States Probation Office for the

10  Central District of California with immediate notice of any name

11  change, business reorganization, sale or purchase of assets,

12  divestiture of assets, or similar action impacting their ability to

13  pay the fine or affecting this agreement.  No change in name, change

14  in corporate or individual control, business reorganization, change

15  in ownership, merger, change of legal status, sale or purchase of

16  assets, or similar action shall alter defendant's responsibilities

17  under this agreement.  Defendant shall not engage in any action to

18  seek to avoid the obligations and conditions set forth in this

19  agreement.

20                    NATURE OF THE OFFENSE

21       6.   Defendant understands that for defendant to be guilty of

22  the crime charged in the single-count information, that is,

23  conspiracy, in violation of Title 18, United States Code, Section

24  371, the following must be true: (1) beginning on or about an unknown

25  date, and ending on or about February 17, 2017, there was an

26  agreement between two or more persons to introduce and cause the

27  introduction of misbranded drugs into interstate commerce, in

28  violation of 21 U.S.C. §§ 331(a), 352, 333(a)(1); (2) defendant

                                4

became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, with agreement on a particular overt act that was committed.

<u>PENALTIES AND RESTITUTION</u>

7.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is:  a five-year period of probation; a fine of $200,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $125.

8.    Defendant agrees to make full restitution to any victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those arising from the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges.  The parties currently believe that there is no applicable amount of restitution, but recognize and agree that this amount could

change based on facts that come to the attention of the parties prior to sentencing.

### SUSPENSION, REVOCATION, AND DEBARMENT

9.   Defendant understands that if defendant holds any regulatory licenses or permits, the convictions in this case may result in the suspension or revocation of those licenses and permits. The USAO makes no representation or promise concerning suspension or debarment of defendant from contracting with the United States or with any office, agency, or department thereof.  Suspension and debarment of organizations convicted under various federal environmental protection and criminal statutes is a discretionary administrative action solely within the authority of the federal contracting agencies.  Defendant understands that unanticipated collateral consequences such as this will not serve as grounds to withdraw defendant's guilty plea.

### FACTUAL BASIS

10.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Defendant's business included the distribution of male sexual enhancement pills to retail locations across the United States.  From 2013 through early 2017, Co-conspirator #1 owned and managed

defendant and held himself out as the person most responsible for the day-to-day operations of defendant.  Co-conspirator #1 controlled all aspects of defendant's business, including its finances, purchasing, sales, and revenues.

From 2013 through early 2017, defendant and Co-conspirator #1 purchased at least 484,232 sexual enhancement pills from Co-conspirator #2, who manufactured and sold the pills from locations in the Central District of California.

Co-conspirator #2 manufactured the pills using Tadalafil that he had smuggled into the United States from suppliers in China.  While the typical Cialis prescription contains 25-85 mg of Tadalafil per pill, Co-conspirator #2 included up to 350-400 mg of Tadalafil in his pills.  None of Co-conspirator #2's pills had been tested or approved by the Food and Drug Administration ("FDA").  Co-conspirator #2 also included Sildenafil, the active pharmaceutical ingredient in Pfizer, Inc.'s prescription drug Viagra, that he had smuggled into the United States from China, as an ingredient in the male sexual enhancement pills that he supplied to defendant.

Co-conspirator #2 did not disclose the presence of Tadalafil (or Sildenafil) on the packaging of the pills that he supplied to defendant.  While the packaging differed somewhat for each of the pill brands, each contained basically the same text in its labeling. All of the labels for the pills that Co-conspirator #2 supplied to defendant stated "no prescription necessary" and listed as ingredients a "proprietary blend" of 13 specified herbal ingredients, plus a "special blend."  None of the labels disclosed that the pills contained Tadalafil or that the pills were drugs for which a prescription was necessary.

Defendant and Co-conspirator #1 typically purchased three types of pills from Co-conspirator #2 and Co-conspirator #3 (Lee's assistant):  white pills, gold pills, and silver pills.  Each color pill had a different brand name, strength, and price (white was the weakest and cheapest; silver was the strongest and most expensive).  When the FDA announced that one of Co-conspirator #2's pill brands was tainted because it contained undisclosed active pharmaceutical ingredients (including Tadalafil), Co-conspirator #2 would begin manufacturing the same colored pill but with a different brand name.  Thus, while the brand names of Co-conspirator #2's pills changed over the years, the formulas for the white, gold, and silver pills remained the same.  For example:

- After the FDA announced in December 2015 that Co-conspirator #2's white "X Again" pills were tainted because they contained undisclosed Tadalafil, defendant and Co-conspirator #1 began buying a replacement brand of pills from Co-conspirators #2 and #3, branded "X Monster," which had the same formula and price as the tainted "X Again" pills and similar labeling that failed to disclose the presence of Tadalafil.

- After the FDA announced in August 2016 that Co-conspirator #2's gold "Master Zone" pills were tainted because they contained undisclosed Tadalafil, defendant and Co-conspirator #1 began buying a replacement gold pill from Co-conspirators #2 and #3, branded "Royal Master," which had the same formula and price as the tainted "Master Zone" pills and similar labeling that failed to disclose the presence of Tadalafil.

- After the FDA announced in August 2016 that Co-conspirator #2's silver "One More Knight" pills were tainted because they contained undisclosed Tadalafil, defendant and Co-conspirator #1 began buying a replacement silver pill from Co-conspirators #2 and #3, branded "Own the Knight," which had the same formula and price as the tainted "One More Knight" pills and similar labeling that failed to disclose the presence of Tadalafil.

Pursuant to the requests of defendant and Co-conspirator #1, Co-conspirator #3 shipped the following quantities of male sexual enhancement pills (all of which contained Tadalafil and had similar labeling that failed to disclose the presence of Tadalafil) from the Central District of California to defendant in Tampa, Florida:

| Date | Invoice No. | Pill Quantity | | |
|---|---|---|---|---|
| | | White Pills: "X Again" & "X Monster" | Gold Pills: "Master Zone" & "Royal Master" | Silver Pills: "One More Knight" & "Own the Knight" |
| 12/22/2015 | 3022 | 3,312 | – | 1,800 |
| 12/29/2015 | 3027 | 2,880 | – | – |
| 1/7/2016 | 3039 | | 600 | 3,240 |
| 1/20/2016 | 3053 | 7,200 | – | – |
| 1/26/2016 | 3056 | – | – | 2,040 |
| 2/1/2016 | 3065 | – | 1,200 | 1,800 |
| 2/3/2016 | 3068 | 2,640 | – | – |
| 2/3/2016 | 3069 | – | 3,240 | 600 |
| 2/10/2016 | 3080 | – | – | 2,840 |
| 2/24/2016 | 3005 | 2,640 | – | 1,200 |
| 3/1/2016 | 5003 | 8,880 | 600 | 2,040 |
| 3/11/2016 | 5016 | – | – | 1,800 |
| 3/23/2016 | 5029 | – | – | 1,200 |
| 3/30/2016 | 5037 | – | 1,200 | 5,040 |
| 4/14/2016 | 5051 | – | 600 | 2,840 |
| 4/25/2016 | 5062 | 1,440 | – | 1,200 |
| 4/29/2016 | 5072 | 1,800 | – | – |

| Date | Invoice No. | Pill Quantity | | |
|---|---|---|---|---|
| | | White Pills: "X Again" & "X Monster" | Gold Pills: "Master Zone" & "Royal Master" | Silver Pills: "One More Knight" & "Own the Knight" |
| 5/9/2016 | 5079 | 1,200 | 600 | 2,640 |
| 5/10/2016 | 5081 | 2,040 | 2,040 | 600 |
| 5/18/2016 | 5094 | – | – | 3,000 |
| 5/25/2016 | 5102 | 1,200 | – | 1,890 |
| 6/2/2016 | 5112 | 3,240 | 600 | 1,200 |
| 6/10/2016 | 5123 | 600 | – | 2,040 |
| 6/13/2016 | 5125 | 1,800 | – | 1,800 |
| 7/1/2016 | 5146 | 1,500 | 600 | 2,940 |
| 7/6/2016 | 5148 | 1,200 | 400 | – |
| 7/8/2016 | 5153 | – | – | 2,520 |
| 7/11/2016 | 5154 | 2,880 | – | – |
| 7/12/2016 | 5159 | – | 600 | 1,200 |
| 7/15/2016 | 5164 | 1,800 | 1,440 | – |
| 7/20/2016 | 5173 | 600 | – | 1,440 |
| 7/26/2016 | 5180 | 300 | – | 200 |
| 7/26/2016 | 5181 | 3,240 | – | 1,200 |
| 8/2/2016 | 5187 | – | – | 1,500 |
| 8/3/2016 | 5188 | – | 1,200 | – |
| 8/4/2016 | 5192 | 3,000 | – | – |
| 8/4/2016 | 5194 | – | – | 2,640 |
| 8/12/2016 | 5202 | – | 2,040 | – |
| 8/15/2016 | 5203 | 3,000 | – | 1,200 |
| 8/26/2016 | 5221 | – | 1,200 | – |
| 9/1/2016 | 5231 | 1,440 | – | – |
| 9/7/2016 | 5241 | 1,200 | – | – |
| 10/6/2016 | 5259 | 1,200 | – | 720 |
| 10/10/2016 | 5269 | 1,800 | – | – |
| 10/13/2016 | 5273 | 1,200 | – | – |
| 10/14/2016 | 5278 | – | 1,200 | – |
| 10/17/2016 | 5287 | 1,440 | 720 | – |
| 10/18/2016 | 5291 | – | – | 1,700 |
| 10/19/2016 | 5295 | – | – | 1,440 |
| 10/21/2016 | 5296 | – | – | 600 |
| 11/2/2016 | 5322 | – | – | 1,100 |
| 11/7/2016 | 5333 | 1,800 | – | – |
| 11/11/2016 | 5339 | 300 | – | – |

| Date | Invoice No. | Pill Quantity | | |
|------|-------------|---------------|---|---|
| | | White Pills: "X Again" & "X Monster" | Gold Pills: "Master Zone" & "Royal Master" | Silver Pills: "One More Knight" & "Own the Knight" |
| 11/14/2016 | 5343 | 1,440 | – | – |
| 11/17/2016 | 5345 | 1,800 | 600 | – |
| 11/18/2016 | 5347 | – | – | 1,440 |
| 11/23/2016 | 5360 | – | – | 1,200 |
| 12/2/2016 | 5367 | 1,200 | 1,200 | – |
| 1/5/2017 | 5372 | – | – | 1,200 |
| 1/13/2017 | 5389 | 2,400 | 300 | 1,200 |
| 1/17/2017 | 5399 | 600 | – | – |
| 1/23/2017 | 5413 | – | 600 | 1,800 |

Defendant knew, or should have known, that all of the pills that it bought from Co-conspirators #2 and #3 were misbranded and contained undisclosed Tadalafil.

In total, from 2013 to 2017, defendant purchased at least 484,232 misbranded male sexual enhancement pills from Co-conspirator #2 for at least $1,087,308.  All of these pills contained Tadalafil and were mislabeled as set forth above.  Defendant resold and distributed these pills to retail locations across the United States.

SENTENCING FACTORS

11.  Defendant and the USAO agree and stipulate that, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 8C2.1 and 8C2.10, the sentencing guidelines are not applicable in determining the fine for an organization violating 21 U.S.C. §§ 331(a), 333(a)(1), but all other sections of Chapter 8 of the U.S.S.G. are applicable in this case, including the provisions regarding probation.  Defendant understands that in determining defendant's sentence, the Court is also required to consider the factors set forth in Title 18, United States Code, Sections 3553(a) and 3572,

including the kinds of sentences and sentencing ranges established under the Sentencing Guidelines.

12.   Pursuant to Chapter 8 of the Sentencing Guidelines and the factors set forth in Title 18, United States Code, Sections 3553(a) and 3572, including the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, the parties agree that defendant should be sentenced as follows:

a.   <u>Probation</u>:  Defendant should be sentenced to probation for a term of three years with conditions to be fixed by the Court. As part of its conditions of probation, defendant shall not buy, sell, or distribute any ingestible or sublingual supplemental product purporting to affect the structure or function of human sex organs. Defendant understands that, regardless of its terms of probation, defendant may not buy, sell, receive, or distribute any drug as defined by the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. 321(g), unless it complies with the FDCA and its implementing regulations.

b.   <u>Criminal Fine</u>:  Defendant should pay a total criminal fine of $70,000.  The criminal fine shall be paid by certified check(s) or wire transfer(s) to the Clerk of the United States District Court for the Central District of California.  Confirmation of the completed payment(s) shall be provided to the USAO.

c.   <u>Special Assessment</u>:  Defendant shall pay a total special assessment of $125.

1

## WAIVER OF CONSTITUTIONAL RIGHTS

2   13.   Defendant understands that by pleading guilty, defendant

3   gives up the following rights:

4         a.   The right to persist in a plea of not guilty.

5         b.   The right to a speedy and public trial by jury.

6         c.   The right to be represented by counsel at trial.

7   Defendant understands, however, that, defendant retains the right to

8   be represented by counsel at every other stage of the proceeding.

9         d.   The right to be presumed innocent and to have the

10   burden of proof placed on the government to prove defendant guilty

11   beyond a reasonable doubt.

12         e.   The right to confront and cross-examine witnesses

13   against defendant.

14         f.   The right to testify and to present evidence in

15   opposition to the charge, including the right to compel the

16   attendance of witnesses to testify.

17         g.   Any and all rights to pursue any affirmative defenses,

18   Fourth Amendment or Fifth Amendment claims, and other pretrial

19   motions that have been filed or could be filed.

20   ## WAIVER OF APPEAL OF CONVICTION

21   14.   Defendant understands that, with the exception of an appeal

22   based on a claim that defendant's guilty plea was involuntary, by

23   pleading guilty defendant is waiving and giving up any right to

24   appeal defendant's conviction on the offense to which defendant is

25   pleading guilty.  Defendant understands that this waiver includes,

26   but is not limited to, arguments that the statute to which defendant

27   is pleading guilty is unconstitutional, and any and all claims that

28

the statement of facts provided herein is insufficient to support
defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

15. Defendant agrees that, provided the Court imposes a total
sentence on the count of conviction of no more than the statutory
maximum, defendant gives up the right to appeal any portion of the
sentence.

16. The USAO agrees that, provided that all portions of the
sentence are at or below the statutory maximum specified above, the
USAO gives up its right to appeal any portion of the sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEA

17. Defendant agrees that if, after entering a guilty plea
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty plea on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then (a) the USAO will be relieved of all of its
obligations under this agreement; and (b) should the USAO choose to
pursue any charge or any civil, administrative, or regulatory action
that was either dismissed or not filed as a result of this agreement,
then (i) any applicable statute of limitations will be tolled between
the date of defendant's signing of this agreement and the filing
commencing any such action; and (ii) defendant waives and gives up
all defenses based on the statute of limitations, any claim of pre-
indictment delay, or any speedy trial claim with respect to any such
action, except to the extent that such defenses existed as of the
date of defendant's signing this agreement.

1        EFFECTIVE DATE OF AGREEMENT

2        18.  This agreement is effective upon signature and execution of

3   all required certifications by defendant, defendant's counsel, and an

4   Assistant United States Attorney.

5        BREACH OF AGREEMENT

6        19.  Defendant agrees that if defendant, at any time after the

7   signature of this agreement and execution of all required

8   certifications by defendant, defendant's counsel, and an Assistant

9   United States Attorney, knowingly violates or fails to perform any of

10  defendant's obligations under this agreement ("a breach"), the USAO

11  may declare this agreement breached.  All of defendant's obligations

12  are material, a single breach of this agreement is sufficient for the

13  USAO to declare a breach, and defendant shall not be deemed to have

14  cured a breach without the express agreement of the USAO in writing.

15  If the USAO declares this agreement breached, and the Court finds

16  such a breach to have occurred, then: (a) if defendant has previously

17  entered a guilty plea pursuant to this agreement, defendant will not

18  be able to withdraw the guilty plea, and (b) the USAO will be

19  relieved of all its obligations under this agreement.

20       20.  Following the Court's finding of a knowing breach of this

21  agreement by defendant, should the USAO choose to pursue any charge

22  or any civil, administrative, or regulatory action that was either

23  dismissed or not filed as a result of this agreement, then:

24            a.   Defendant agrees that any applicable statute of

25  limitations is tolled between the date of defendant's signing of this

26  agreement and the filing commencing any such action.

27            b.   Defendant waives and gives up all defenses based on

28  the statute of limitations, any claim of pre-indictment delay, or any

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND PROBATION OFFICE NOT PARTIES</u>

21.  Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

22.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this

16

case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

23.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

24.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//
//
//
//
//
//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

25.    The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney

*Matthew O'Brien*                              February 23, 2021
MATTHEW W. O'BRIEN                             Date
Assistant United States Attorney

*Brian Dean Moses*                             February 17, 2021
BRIAN DEAN MOSES                               Date
Authorized Representative of
Defendant SHORESIDE ENTERPRISES,
INC.

*Eddie Jauregui*                               2/18/2021
JEREMY STERNBERG                               Date
EDDIE JAUREGUI
Attorneys for Defendant SHORESIDE
ENTERPRISES, INC.

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

1  of relevant Sentencing Guidelines provisions, and of the consequences

2  of entering into this agreement.  No promises, inducements, or

3  representations of any kind have been made to me other than those

4  contained in this agreement.  No one has threatened or forced me in

5  any way to enter into this agreement.  I am satisfied with the

6  representation of my attorney in this matter, and SHORESIDE

7  ENTERPRISES, INC. is pleading guilty because it is guilty of the

8  charge and wishes to take advantage of the promises set forth in this

9  agreement, and not for any other reason.

10  _____            February 17, 2021
                                               _____
11  BRIAN DEAN MOSES                           Date
   Authorized Representative of
12  Defendant SHORESIDE ENTERPRISES,
   INC.

13

14

15                    CERTIFICATION OF DEFENDANT'S ATTORNEY

16       I am defendant SHORESIDE ENTERPRISES, INC.'s attorney.  I have

17  carefully and thoroughly discussed every part of this agreement with

18  my client.  Further, I have fully advised my client of its rights, of

19  possible pretrial motions that might be filed, of possible defenses

20  that might be asserted either prior to or at trial, of the sentencing

21  factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing

22  Guidelines provisions, and of the consequences of entering into this

23  agreement.  To my knowledge: no promises, inducements, or

24  representations of any kind have been made to my client other than

25  those contained in this agreement; no one has threatened or forced my

26  client in any way to enter into this agreement; my client's decision

27  to enter into this agreement is an informed and voluntary one; and

28

the factual basis set forth in this agreement is sufficient to
support my client's entry of a guilty plea pursuant to this
agreement.

_____          2/18/2021

JEREMY STERNBERG                     Date
EDDIE JAUREGUI
Attorneys for Defendant SHORESIDE
ENTERPRISES, INC.

# EXHIBIT A

1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          No.

11            Plaintiff,               I N F O R M A T I O N

12            v.                       [18 U.S.C. § 371: Conspiracy]

13   SHORESIDE ENTERPRISES, INC.,      [CLASS A MISDEMEANOR]

14            Defendant.

15

16        The Acting United States Attorney charges:

17                        [18 U.S.C. § 371]

18   A.   INTRODUCTORY ALLEGATIONS

19        At times relevant to this Information:

20        1.   Defendant SHORESIDE ENTERPRISES, INC. ("SHORESIDE") was a

21   Florida corporation located at 6345 Newton Circle in Tampa, Florida.

22   Defendant SHORESIDE distributed male sexual enhancement pills to

23   retail locations across the United States.

24        2.   Co-conspirator #1 was the owner and president of defendant

25   SHORESIDE.  Co-conspirator #1 was responsible for ordering male

26   sexual enhancement pills from defendant SHORESIDE's suppliers.

27        3.   Co-conspirator #2 supplied male sexual enhancement pills to

28   defendant SHORESIDE.  Co-conspirator #2 owned and operated several

businesses between 2011 and 2017 for the purpose of manufacturing and distributing male sexual enhancement pills that he marketed as herbal remedies but that in fact contained undisclosed Tadalafil, an active pharmaceutical ingredient.  Each of Co-conspirator #2's pill businesses was located in the Central District of California.

4.   Co-conspirator #3 worked for Co-conspirator #2 as an office assistant from approximately 2014 to 2017.

B.   THE OBJECT OF THE CONSPIRACY

5.   Beginning on a date unknown to the United States Attorney and continuing to on or about February 17, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant SHORESIDE, together with others known and unknown to the United States Attorney, including Co-conspirators #1, #2, and #3, knowingly conspired to introduce and cause the introduction of misbranded drugs into interstate commerce, in violation of Title 21, United States Code, Sections 331(a), 352, 333(a)(1).

C.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

6.   The object of the conspiracy was to be accomplished, in substance, as follows:

a.   Co-conspirator #2 would import shipments of bulk Tadalafil from suppliers in China.

b.   After Co-conspirator #2 received the bulk Tadalafil in the Central District of California, he would cause the bulk Tadalafil to be manufactured into pills that Co-conspirators #2 and #3 would sell in packages whose labeling did not disclose the presence of Tadalafil, and whose labeling falsely stated that no prescription was necessary, even though the pills were in fact prescription drugs.

2

        c.    Defendant SHORESIDE and Co-conspirator #1 would place orders for the misbranded pills with Co-conspirators #2 and #3.

        d.    Co-conspirator #3 would fulfill the orders placed by defendant SHORESIDE and Co-conspirator #1 by shipping the misbranded drugs from the Central District of California to defendant SHORESIDE and Co-conspirator #1 in Tampa, Florida.

        e.    When the FDA announced that a certain brand of Co-conspirator #2's pills was tainted because the pills contained undeclared Tadalafil, defendant SHORESIDE and Co-conspirator #1 would begin buying a replacement brand of pills, with an identical formula (including Tadalafil) but different brand name, from Co-conspirators #2 and #3.  For example:

        i.    After the FDA announced in December 2015 that Co-conspirator #2's white "X Again" pills were tainted because they contained undisclosed Tadalafil, defendant SHORESIDE and Co-conspirator #1 would begin buying a replacement brand of pills from Co-conspirators #2 and #3, branded "X Monster," which had the same formula and price as the tainted "X Again" pills and similar labeling that failed to disclose the presence of Tadalafil.

        ii.    After the FDA announced in August 2016 that Co-conspirator #2's gold "Master Zone" pills were tainted because they contained undisclosed Tadalafil, defendant SHORESIDE and Co-conspirator #1 would begin buying a replacement gold pill from Co-conspirators #2 and #3, branded "Royal Master," which had the same formula and price as the tainted "Master Zone" pills and similar labeling that failed to disclose the presence of Tadalafil.

        iii. After the FDA announced in August 2016 that Co-conspirator #2's silver "One More Knight" pills were tainted because

they contained undisclosed Tadalafil, defendant SHORESIDE and Co-conspirator #1 would begin buying a replacement silver pill from Co-conspirators #2 and #3, branded "Own the Knight," which had the same formula and price as the tainted "One More Knight" pills and similar labeling that failed to disclose the presence of Tadalafil.

7.   Defendant SHORESIDE and Co-conspirator #1 would resell and distribute the replacement pills to retail locations across the United States, despite knowing that the pills had the same formula and misleading packaging as the misbranded pills that the FDA had declared were tainted.

D.   OVERT ACTS

8.   On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant SHORESIDE, and others both known and unknown to the United States Attorney, including Co-conspirators #1, #2, and #3, committed various overt acts within the Central District of California and elsewhere, including, but not limited to, the following:

Overt Acts Nos. 1 Through 68:  On or about the following dates, pursuant to orders made by defendant SHORESIDE and Co-conspirator #1, Co-conspirators #2 and #3 shipped the following quantities of misbranded pills from the Central District of California to defendant SHORESIDE in Tampa, Florida:

//

//

//

//

//

//

| Overt Act | Date | Invoice No. | Pill Quantity | | |
|---|---|---|---|---|---|
| | | | White Pills: "X Again" & "X Monster" | Gold Pills: "Master Zone" & "Royal Master" | Silver Pills: "One More Knight" & "Own the Knight" |
| 1 | 12/22/2015 | 3022 | 3,312 | – | 1,800 |
| 2 | 12/29/2015 | 3027 | 2,880 | – | – |
| 3 | 1/7/2016 | 3039 | | 600 | 3,240 |
| 4 | 1/20/2016 | 3053 | 7,200 | – | – |
| 5 | 1/26/2016 | 3056 | – | – | 2,040 |
| 6 | 2/1/2016 | 3065 | – | 1,200 | 1,800 |
| 7 | 2/3/2016 | 3068 | 2,640 | – | – |
| 8 | 2/3/2016 | 3069 | – | 3,240 | 600 |
| 9 | 2/10/2016 | 3080 | – | – | 2,840 |
| 10 | 2/24/2016 | 3005 | 2,640 | – | 1,200 |
| 11 | 3/1/2016 | 5003 | 8,880 | 600 | 2,040 |
| 12 | 3/11/2016 | 5016 | – | – | 1,800 |
| 13 | 3/23/2016 | 5029 | – | – | 1,200 |
| 14 | 3/30/2016 | 5037 | – | 1,200 | 5,040 |
| 15 | 4/14/2016 | 5051 | – | 600 | 2,840 |
| 16 | 4/25/2016 | 5062 | 1,440 | – | 1,200 |
| 17 | 4/29/2016 | 5072 | 1,800 | – | – |
| 18 | 5/9/2016 | 5079 | 1,200 | 600 | 2,640 |
| 19 | 5/10/2016 | 5081 | 2,040 | 2,040 | 600 |
| 20 | 5/18/2016 | 5094 | – | – | 3,000 |
| 21 | 5/25/2016 | 5102 | 1,200 | – | 1,890 |
| 22 | 6/2/2016 | 5112 | 3,240 | 600 | 1,200 |
| 23 | 6/10/2016 | 5123 | 600 | – | 2,040 |
| 24 | 6/13/2016 | 5125 | 1,800 | – | 1,800 |
| 25 | 7/1/2016 | 5146 | 1,500 | 600 | 2,940 |
| 26 | 7/6/2016 | 5148 | 1,200 | 400 | – |
| 27 | 7/8/2016 | 5153 | – | – | 2,520 |
| 28 | 7/11/2016 | 5154 | 2,880 | – | – |
| 29 | 7/12/2016 | 5159 | – | 600 | 1,200 |
| 30 | 7/15/2016 | 5164 | 1,800 | 1,440 | – |
| 31 | 7/20/2016 | 5173 | 600 | – | 1,440 |
| 32 | 7/26/2016 | 5180 | 300 | – | 200 |
| 33 | 7/26/2016 | 5181 | 3,240 | – | 1,200 |
| 34 | 8/2/2016 | 5187 | – | – | 1,500 |
| 35 | 8/3/2016 | 5188 | – | 1,200 | – |

| Overt Act | Date | Invoice No. | Pill Quantity | | |
|---|---|---|---|---|---|
| | | | White Pills: "X Again" & "X Monster" | Gold Pills: "Master Zone" & "Royal Master" | Silver Pills: "One More Knight" & "Own the Knight" |
| 36 | 8/4/2016 | 5192 | 3,000 | – | – |
| 37 | 8/4/2016 | 5194 | – | – | 2,640 |
| 38 | 8/12/2016 | 5202 | – | 2,040 | – |
| 39 | 8/15/2016 | 5203 | 3,000 | – | 1,200 |
| 40 | 8/26/2016 | 5221 | – | 1,200 | – |
| 41 | 9/1/2016 | 5231 | 1,440 | – | – |
| 42 | 9/7/2016 | 5241 | 1,200 | – | – |
| 43 | 10/6/2016 | 5259 | 1,200 | – | 720 |
| 44 | 10/10/2016 | 5269 | 1,800 | – | – |
| 45 | 10/13/2016 | 5273 | 1,200 | – | – |
| 46 | 10/14/2016 | 5278 | – | 1,200 | – |
| 47 | 10/17/2016 | 5287 | 1,440 | 720 | – |
| 48 | 10/18/2016 | 5291 | – | – | 1,700 |
| 49 | 10/19/2016 | 5295 | – | – | 1,440 |
| 50 | 10/21/2016 | 5296 | – | – | 600 |
| 51 | 11/2/2016 | 5322 | – | – | 1,100 |
| 52 | 11/7/2016 | 5333 | 1,800 | – | – |
| 53 | 11/11/2016 | 5339 | 300 | – | – |
| 54 | 11/14/2016 | 5343 | 1,440 | – | – |
| 55 | 11/17/2016 | 5345 | 1,800 | 600 | – |
| 56 | 11/18/2016 | 5347 | – | – | 1,440 |
| 57 | 11/23/2016 | 5360 | – | – | 1,200 |
| 58 | 12/2/2016 | 5367 | 1,200 | 1,200 | – |
| 59 | 1/5/2017 | 5372 | – | – | 1,200 |
| 60 | 1/13/2017 | 5389 | 2,400 | 300 | 1,200 |
| 61 | 1/17/2017 | 5399 | 600 | – | – |
| 62 | 1/23/2017 | 5413 | – | 600 | 1,800 |

//

//

//

//

| Overt Act | Date | Invoice No. | Pill Quantity | | |
|---|---|---|---|---|---|
| | | | White Pills: "X Again" & "X Monster" | Gold Pills: "Master Zone" & "Royal Master" | Silver Pills: "One More Knight" & "Own the Knight" |
| 63 | 1/27/2017 | 5425 | 3,000 | – | 600 |
| 64 | 2/3/2017 | 5436 | 2,400 | 1,200 | – |
| 65 | 2/7/2017 | 5443 | – | 1,440 | – |
| 66 | 2/10/2017 | 5447 | 1,200 | – | 2,400 |
| 67 | 2/14/2017 | 5464 | 900 | – | – |
| 68 | 2/17/2017 | 5468 | – | – | 1,200 |

TRACY L. WILKISON
Acting United States Attorney


BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

JOSEPH O. JOHNS
Assistant United States Attorney
Chief, Environmental and
Community Safety Crimes Section

MARK A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Environmental and
Community Safety Crimes Section

MATTHEW W. O'BRIEN
Assistant United States Attorney
Environmental and Community
Safety Crimes Section